Good morning. May it please the court. Elidoro Moreno, Jr. for the petitioner, Jorge Ramos Mendoza. This court must remand this case to the board because it committed legal error in its analysis of the one-year bar, and the record compels the conclusion that Mr. Ramos has a well-founded fear of persecution in El Salvador. Regarding the one-year analysis, the board committed two legal errors. First, it constitutes legal error to impute the responsibility of filing an asylum application to a third party when that third party was never authorized to act on behalf of the applicant. Does that mean that a person who has a severe mental illness is not subject to a bar at all? Well, they would be subject to the bar, but it depends on the circumstances of that mental illness, Your Honor. So the court would have to analyze what exactly does that mental illness cause the respondent to be able to do or not to do. Here the evidence, the uncontroverted evidence, explains that Mr. Ramos couldn't do anything for himself. He couldn't even attend to his most basic needs. So your position with respect to Mr. Ramos is that the bar did not apply at all? That is correct, Your Honor. It did not apply because Mr. Ramos's severe schizophrenia prevented him from acting on his behalf or, more importantly, in the context of the board's decision, he was never able to authorize anyone to act on his behalf. This is contrary to cases where this Court has held that the failure to file an asylum application may be imputed to an applicant. But, counsel, was the board entitled to take into consideration the fact that his family had filed for benefits for him before? Well, the court could have considered that, but we would argue that that is irrelevant, because the family filed for TPS status back when Mr. Ramos was a minor. It was before he was diagnosed with his severe schizophrenia and before the majority of his symptoms and most egregious behavior came into effect. So it really doesn't matter. And what is important to note in that circumstance when Mr. Ramos was not in his most grave state was that the family allowed his TPS status to expire simply because Mr. Ramos didn't get his fingerprints taken. So thus, in this instance where Mr. Ramos did not authorize his family to act on his behalf, the board committed legal error in imputing that responsibility to his family. Thus, this, excuse me, this case must be remanded in order for the BIA to consider whether Mr. Ramos himself was able to file for asylum. Even at what, on what approximate date was a final diagnosis of acute schizophrenia established? It was in 2006, about the middle of the year, Your Honor.  2006, somewhere in there? Yes, Your Honor. And then he was not released from an inpatient mental hospital until about the beginning to the middle of 2007. And from that time is when the immigration judge and presumably the board, as it didn't mention, but presumably from that time until 2010 when the family filed for asylum on Mr. Ramos's behalf. What explains the three years? It's about three years in between? About three years, yes, Your Honor. Now, that gets me. Can I focus just for a second on that period? Yes, of course. Okay. From early 2007 until 2010 when something was filed by the family on his behalf? That is correct. Okay. What happened in there? And that gets me to my second point and the legal error that the board committed. Just before you respond to that question, what happened, Judge, during that period was? Yes, Your Honor. What happened during that time is that the family was having a tremendous difficulty in dealing with Mr. Ramos and his mental illness. The board did not consider that the family, that Mr. Ramos needed the cooperation of five family members in order to care for Mr. Ramos. And even then they were having great difficulty. Mr. Ramos specifically, the family had to hide all sharp objects from within their home from Mr. Ramos. They could only leave one meal's worth of food in the refrigerator at a time. They had to keep him away from strangers and they had to know where he was at all times because he would engage in inappropriate behavior and simply couldn't care for himself. Dr. Ross Wright, the psychologist, indicated that even with the high-end medication that he was on, he still couldn't take care of himself, couldn't provide for his own needs, couldn't take a shower, couldn't make any decision on his behalf, let alone   Yes, Your Honor. 2007 to 2010, during that period of time, were any filings on his behalf made? Before the application of the asylum application, no. Listen carefully. Yes. Between 2007 and 2010, when something was filed on his behalf, were any other filings made on his behalf of any kind in any court or administrative agency? No. Not from my understanding and from the record. Nothing else was filed on his behalf during that time. All right. So it's a simple no. No, Your Honor. Okay. Correct. So even if the Court agrees with the Board and thinks that they could impute the responsibility of filing to a third party, the Board also committed legal error in not considering the totality of the circumstances that prevented the family from doing so, which is the different circumstances that I described and the difficulty the family was having in caring for Mr. Ramos during that time. Was that ever presented as a justification for the delay? I mean, I understand the point about the serious mental problems that he was having and how those manifested themselves, but was that ever argued as a basis for an inability to file papers on his behalf earlier or for him to make a decision to authorize a family member to do so? He wasn't completely unable to function. He was functioning, although with substantial difficulty. He was functioning, Your Honor, but he couldn't make any decisions for himself, even regarding basic needs. What's the evidence of that, that he was unable to make any decisions for himself during this 2007 to 2010 period? Well, the Dr. Ross Wright, the psychologist's report, addresses this issue and explains with great detail all the different activities that he was doing and unable to do specifically. This is in the administrative record on page 343, Dr. Ross Wright's report, where she describes, even with the medication, the severe, aggressive, and inappropriate behavior he was exhibiting in the families. And then in the transcript, Mr. Ramos's father and his brother testified about how they cared for him and the difficulty that they were having and that it required five family members, his mother, father, brother, sister-in-law, and sister, in order to try to take care of him, and even that was done with great difficulty. Now, moving on to the next point, the record compels the conclusion that Mr. Ramos has a well-founded fear of persecution in El Salvador. The uncontroverted evidence establishes that even with the high-end medication that Mr. Ramos is provided here in the United States, he exhibits aggressive and inappropriate behavior. Specifically, he becomes increasingly hostile and belligerent. His speech is often pressured, incomprehensible, and profane. His thought processes are illogical. He makes odd noises, crawls on the floor searching for food. He becomes aggressive and physically intimidating. He even engages in compulsive, inappropriate sexual behavior. And as Dr. Ross Wright described, he neglects personal hygiene, and he is unable to meet his own basic needs. Now, the record evidence here also compels the conclusion that with him exhibiting those behaviors in El Salvador, he will be harmed either by civilians or by the police. Dr. Mendoza, the expert from El Salvador, specifically testified that the police would bring mentally ill patients to the only hospital in El Salvador where he worked, bound at the ankles, knees, and wrists. They would come with broken bones in their extremities, severe trauma in their head, where they would even have to be sent to another hospital before they could treat them. Now, once they were in this mental hospital, the only antipsychotics that the government could provide them is outmoded antipsychotics that have severe side effects. And these side effects include uncontrollable disfiguration of the face and neck, rigidity and trembling of the body, respiratory complications, abundant secretion of saliva, muscular and even lung damage. Now, there can be no dispute that the giving of these antipsychotics is to treat the mentally ill patient's psychosis. Thus, the harm that's caused by these antipsychotics is on account of their mental illness. There's no way that this Court could hold otherwise and is compelled to conclude that the harm done by the antipsychotics and by the police, who clearly know that a patient has mental illness, if they're taking them to a mental hospital, the only mental hospital in El Salvador, then clearly the harm that's caused by the police in that instance or by the antipsychotics is on account of the patient's mental illness. And with that, I would reserve the rest of my time. All right. Thank you, counsel. We'll hear from the government. Good morning. Good morning. May it please the Court, my name is Sharon Clay for the government. In response to Counselor's arguments about the Board committing legal error, we would disagree. The Board, as you all had noticed, is entitled to take, in effect, factors in the Petitioner's surroundings to determine whether or not he should be required to file his application within a reasonable time. But was the Board entitled to put that on his family? Well, it would be unreasonable for him not to. I mean, as stated earlier, if the Board had not placed onus on his parents, then he would be not required or he wouldn't have a bar to eligibility or to file an asylum claim forever. Based on everything that Counselor has just said about his grave disability, Petitioner would unlikely be able to file his application for asylum indefinitely, and the Board does not find that as a reasonable option. What's reasonable is what has actually occurred is that the parents had actually filed the asylum application on his behalf. What the Board, correct me if I'm wrong, what the Board found was unreasonable was the three-year delay during this window that was described with Mr. Ramos's counsel from 2007 to 2010. They didn't reach back to the seven years before that. So it's during this period of time. And I have the same question for you that I did for Mr. Ramos's counsel, which is were there, other than the filing at the end, in 2010, were there any other family-assisted or other filings that Mr. Ramos engaged in anywhere? No, not that I am aware of. No, he did not make any other filings. Well, the record is unclear about where and how he was getting medication. It sounds like he's on some form of public assistance. Yes, it does. He's getting treatment at a health facility where his parents have to take him repeatedly back and forth to have treatment. Well, presumably something has to be filled out to get medication on someone's behalf. But that's – I don't think that's in the record, is it? No, it's not. But everything has to be done for his family. He's just completely incapable of taking care of himself. Thus, the board found it very reasonable to take that into consideration when it decided the reasonableness and not filing the application within three years. So if we conclude that what the family didn't do is not imputable to him, then you would concede that the one-year bar would not bar him? Well, to some degree, our position is that the court lacks jurisdiction to – well, okay, let me start from the beginning. While the court does have jurisdiction to consider the reasonableness of the asylum application filing, that reasonableness applies to whether or not the court is actually considering disputed facts versus undisputed facts. In this case, we would argue that the underlying facts that the board took into consideration for making its determination about reasonableness are disputed, and that's the ability or duty of the parent to actually file on his behalf. Okay. Well, I don't think you answered my question. My question is, if you don't impute the family's inaction to him, do you concede that the one-year bar would not apply to him because he was incapable of doing this for himself? Not exactly. The immigration judge had alluded to the fact that even in his circumstance that the presumptive six-month period, that's the normal presumptive period of time, could be extended under rare cases. Unfortunately, in this particular case, the Petitioner did not make any claims to rare cases or rare circumstances for why the parent could not file on his behalf within the three years. But the question was, if you don't accept the proposition that it was incumbent upon the parents to do, to make the filing, then how can it be unreasonable for a mentally incapable person to fail to file? The fact of the matter is he did file, and the reason that he did file is that his parent filed. So to take the premise that because he's incapable of filing that he should be entitled to an unlimited bar to filing for asylum is unreasonable. That's not what we're here to decide, as I understand it, and you're perfectly free to correct me if I'm wrong. Correct. We're looking at that three-year period of time, correct? Correct. The Board did not say you've waited 10 years to do this, blah, blah, blah. They focused on that three-year period of time. Correct. And during that three-year period of time after he was diagnosed with acute schizophrenia, there's no evidence in the record that either he or others on his behalf filed anything anywhere.  Correct? That is true. So what did the Board look to prior to 2010 going back to 2007 to determine that they waited too long to file? For either form of relief, whether it's extraordinary or unchanged circumstances, the person is supposed to file within a reasonable period of time. Whether it's the Petitioner or the Petitioner's guardian, both are subject to that same burden. And while the Petitioner's condition is understandable and the IJ did take into consideration the family's concerns and how serious it was to be able to take care of him, they still found that the parent, knowing that he did not have any status in the United States, ultimately should have taken control of the situation and actually filed the petition. Now, is there a case that you can cite to us, either from the Board or from a court, that says the guardian is under the same compulsion to file within a reasonable time as the Petitioner? No, that was just a weighing of the evidence that the Board engaged in, which the Board is entitled to do. I mean, entitled to take in all facts and circumstances and make determinations as to whether or not the application was able to be filed within a reasonable time. With regard to the asylum claim, the asylum claim was properly dismissed because the Petitioner failed to establish that his fear was objectively reasonable. Petitioner's fear was based largely on the possibility of being harmed if he didn't have adequate care, adequate supplies, adequate medication, adequate living facilities, however, based on the testimony of the Petitioner's family members, the Board did not find that the, that those issues were objective. They didn't find that it was immediately discernible that he was going to have difficulty with being medicated or he was going to find himself homeless or find himself in a public facility. What about opposing counsel's representation that there's only one mental hospital in El Salvador, and when mentally ill patients are transported there, they often arrive having been physically abused? What's your response to that? Well, it's a very unfortunate situation and circumstance, but the same situation could happen here in the United States. Oftentimes, many people do misinterpret actions by mentally ill patients. However, the premise or the basis for qualifying for asylum is that he has to be harmed on account of a protected ground. And based on the evidence as presented, there hasn't really been much evidence to show motive, motive as to nexus, not motive as to animus or harm for persecution. And based on the lack of evidence or the lack of motive evidence in terms of on account of, the Board was unable to determine that the harm that he was going to suffer was going to be based on a protected ground. There are some countries, China's a good example, that will not take asylum claimants, Petitioners, back even though a court has said it's okay to remove. Is El Salvador one of those countries? No, not that I know of. Do we know whether they would take this man back? I don't know. We haven't made any, or there hasn't been any arrangements to get travel documents for this particular petitioner. But it is true for China that it is kind of different. But you're not aware of a blanket policy in El Salvador? El Salvador, no. Not in any of the Americas. That being said, I would like to say that the Board's now, the petitioner's application for asylum was reasonable under circumstances. And to the extent that this Court finds that additional evidence or additional analysis needs to be done in this case, to make a determination, the Court should remand the case back to the Board. I want to ask one question about the medication issue. It isn't clear from the record where he's getting and how he's getting his medication in the United States, who's paying for it. I'm sorry. No, not who's paying for it. So it isn't clear to me that he can't continue to take that medication and get that medication if he's back in El Salvador. Is that correct? That is correct. That was one of the items that the Board found, that there was no evidence showing that he couldn't get the medication over there. There also is, they have some new private facilities that are over there as well, and there was no indication whether or not he could utilize any of those. The family members never said they could. So there was a question as to whether or not harm would come to him if he was returned to El Salvador. All right. Thank you, counsel. Rebuttal. Very quickly, Your Honor. Dr. Mendoza specifically testified as to the supposed private institutions that have horrendous human rights violations at them, where the people that are attending the individuals at private facilities in El Salvador do not know how to treat persons with mental illnesses, and many times they're sleeping on the floor, not being attended to, not giving the proper treatment. So that would also be persecution if he were to be placed in one of these facilities. It is correct that the record doesn't make clear how he's getting his medication now, but what the record does make clear, both from his father and his brother, is that they stated that they would not be able to pay the $720 a month that it would cost to give him his medication, which Dr. Mendoza testified to, and that there would be no one in El Salvador that could care for him, as the only people there are his two elderly grandparents and one sister who is a single mom who is fleeing within El Salvador, avoiding gang violence. So based on that evidence, this Court must conclude that Mr. Ramos has a well-founded fear of future persecution. Thank you. Roberts. One quick question. Yes, Your Honor. If this were sent back, would the record you would develop in support of the asylum claim be any different? Well, Your Honor, if this were to be sent back to the immigration judge, what could possibly be provided is evidence regarding how he receives his treatment here, which is not clear in the record. But other than that, we believe that the record is pretty clear and supports and compels the conclusion that he should get protection. All right. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the Court.
judges: Lynn, Hawkins, Rawlinson